IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **8:22CR147** |
| vs. | |
| **JANY G. JOCK,** | **ORDER** |
| **Defendant.** | |

     This matter is before the Court on the "Pretrial Motions" ([Filing No. 204](#)) filed by Defendant, Jany G. Jock ("Defendant Jock"). Defendant Jock requests the Court sever his trial from the trial of his co-defendants pursuant to Rule 14 of the Federal Rules of Criminal Procedure. Defendant Jock filed a brief ([Filing No. 205](#)) and Index of Evidence ([Filing No. 206](#)) in support of his motion. The government filed a brief in opposition ([Filing No. 211](#)). Defendant initially requested an evidentiary hearing, but following a status conference held with counsel for the parties on November 30, 2023, Defendant withdrew his request for an evidentiary hearing, and the Court deemed the matter submitted. (Filing No. 214). For the following reasons, the Court will deny the motion.

## BACKGROUND

     On January 21, 2022, a Douglas County County Court judge issued a no-knock search warrant for a single-family residence at 4704 Ellison Avenue, Omaha, Nebraska, based upon an application and affidavit by Omaha Police Department Officer David Ullery ("Officer Ullery"). The search warrant affidavit contained the following information:

> On January 21st 2022, Officer Nick SIDZYIK #1808 contacted a representitive [sic] of Omaha Public Power District and found that Thokat KUOTH is the party responsible for the utilities at 4704 Ellison Ave, Omaha, Douglas County, Nebraska. . . .
>
> Recent events among the TRIP SET Gang members have led to an on-going investigation by the Omaha Police Department. The on-going investigations include drug overdoses leading in death, drug sales, drug possession and violent crimes, to include shots fired, robberies, felony assaults and multiple recovered firearms.
>
> Recent NIBIN information (National Integrated Ballistic Information Network) which provides actionable investigative leads in a timely manner,

have also assisted in the on-going investigations.

Within the last thirty 30 days a concerned citizen stated that drugs were being sold and stored from 4704 Ellison Avenue, and firearms were within the residence of 4704 Ellison Avenue.

The address of 4704 Ellison Avenue is part of this on-going investigation. Affiant Officer knows a resident, Goa DAT (*/*/1997) was the victim of a shooting in Lincoln, Nebraska on 10/30/2021. DAT passed away from his injuries. The DAT brothers, Dilang DAT (*/*/1993) Baling DAT (*/*/1996) and Det DAT (*/*/1994) all use 4704 Ellison Avenue as their primary residence. Since the homicide of Goa DAT there have been additional assaults and violent crimes related to his death, throughout Omaha and various cities in Nebraska. Baling DAT, Dilang DAT and Det DAT all [are] Nebraska convicted felons.

> Baling DAT was convicted of an F2-Robbery Disposition date 9/22/2014
> Dilang DAT was convicted of an F2-Robbery Disposition date 12/22/2014
> Det DAT was convicted of an F2-Burglary Disposition date 4/27/2017

On January 21st, 2022 at 0520 hours Officer GALLOWAY #2034 went to the address of 4704 Ellison Ave and was able to retrieve two bags of trash that was sitting out front of 4704 Ellison Avenue, at the end of the driveway along Ellison Avenue. It should be noted that Friday is the regular day for trash pickup. GALLOWAY transported the trash bag to a secured location.

On January 21st 2022 at 0820 hours, Affiant Officer and Officer BRAUN #1957 searched the trash bags and located the following property.

> Item #1- suspected marijuana residue between two cups
> Item #2- Quantum Fiber mailer to the "current resident" at 4704 Ellison Avenue
> Item #3- Nebraska Medicine prescription information to Chudier LUL */*/94 at 4704 Ellison Ave
> Item #4- Clear partial baggie (zip lock style) that is ripped.
> Item #5- "4" 9 mm WIN LUGER bullets located inside of a tied black latex glove, inside of a second latex glove.

On January 21st 2022 at 1100 hours, Affiant Officer ULLERY #1845 transported Item #1 to the Nebraska Public Service Laboratory for testing. The evidentiary test resulted in, Item # 1 identified as cannabis with tetrahydrocannabinol (THC) present.

. . .

Based upon your Affiant's training, experience, research and/or conversations that your Affiant had with other law enforcement officers and/or reports that your Affiant has read, your Affiant requests to search for and seize any weapons, spent casings, any miscellaneous gun/firearm pieces, ammunition, gun cleaning items or kits, holsters, ammunition belts, original box packaging materials,

magazines, targets, expended pieces of lead/bullets, any photographs of firearms, or any paperwork showing the purchase, storage, disposition, and/or dominion and control over any guns, any ammunition, or any of the above items. . . .

. . .

Affiant Officer has reason to believe, and do believe, that if Officers of the Omaha Police Department are granted a court authorized search warrant for the address of 4 704 Ellison Ave, Omaha, Douglas County, Nebraska, Officers will obtain evidence for the offense of possession of a controlled substance and/or firearms violations, which is a violation of the state statutes of the State of Nebraska.

. . . [A] No Knock Search Warrant is requested because:

Due to the possible small amounts of narcotics being used at 4704 Ellison Ave, Omaha, Douglas County, Nebraska, Affiant Officer knows from past experience that if officers were to knock and announce their presence and purpose, the evidence being sought could easily be destroyed by flushing it down the toilet, sink and/or swallowing it.

Due to the fact that ammunition was discovered wrapped inside of latex gloves inside of the trash pull. It is reasonable [sic] to believe that firearms or evidence of firearms are inside of the residence.

Due to the DAT brothers being with the TRIP SET gang and Affiant Officers knowing how violent the TRIP SET gang is, along with recent violent crimes in the area to include multiple homicides, felony assaults and shots fired within the Trip Set gang.

Baling DAT is a convicted felon and has 32 IMS entries to include robberies and obstructing. Det DAT is a convicted felon and has 44 IMS entries to include burglary and robbery attempt. Dilang DAT is a convicted felon and has 45 IMS entries to include assault and robbery.

Additionally, during an investigation on 1/11/2018 at 4704 Ellison Avenue (search warrant) a black S & W MM9 handgun ser # LDJ0677, which was confirmed stolen, was located at the residence.

([Filing No. 206-1](#)).

Omaha Police Department officers executed the search warrant at 7:04 a.m. on January 26, 2022. ([Filing No. 206-2](#)). Defendant and his codefendants, Dilang Dat ("Dilang"), Baling Dat ("Baling"), and Bumatet Duop ("Bumatet"), were present in the house during the search. Officers recovered the following items during the search:

- Venue items
- Several "baggies" of suspected marijuana (cumulative total weight 40.7 grams)
- Suspected cocaine (cumulative total weight 13.6 grams)

3

- Alleged drug paraphernalia including digital scales and plastic "baggies"
- Cellular phones
- Two boxes of federal 5.7 x 28 ammunition
- An extended magazine for a Glock firearm
- A bill of sale for a firearm to Defendant Jany Jock, which indicated he previously purchased multiple firearms from Cabela's
- A cumulative total of $5,350.00 cash
- Sig Sauer 9 mm handgun
- Taurus GTC 9 mm handgun
- Glock 23 .40 cal. Handgun
- Glock 19 9 mm handgun
- Ruger 57 handgun
- A bag of unspecified bullets stored in a blue latex glove

Of the five firearms located in the house during the search, two were purchased by Defendant Jock.  (Filing No. 211 at p. 2).

In the bedroom where Defendant Jock was detained during the execution of the warrant, officers recovered a Glock 19 9mm from behind the bed; a plastic baggie of marijuana; zip lock baggies; a digital scale; and Defendant Jock's iPhone.  Defendant Jock was arrested and made no statements to law enforcement.  Defendant Jock consented to a search of his iPhone, and law enforcement recovered several items of evidentiary value, including: pictures of firearms; pictures of fentanyl pills and marijuana; a picture of Baling holding a Glock pistol; a picture of Dilang's phone number; a picture of several individuals, including Defendant, Dilang, and Baling, inside the 4704 Ellison Ave. residence; a video taken by Defendant Jock in a vehicle of Baling waving a Glock and an unknown male waving a pistol; and chats between Defendant Jock and other individuals regarding the sale of a firearm, ammunition, and fentanyl.  (Filing No. 211 at pp. 3-4).

In the room occupied by occupied by Dilang, officers found a Ruger 57, 5.7x28mm firearm with high-capacity magazines and 5.7x28mm ammunition in a blue latex glove.  Dilang has a prior felony conviction for  Hobbs Act Robbery under 18 U.S.C. § 1951, and was on supervised release in this district at the time.  See Case No. 8:14CR409.  Baling, also a previously convicted felon, was found to be in possession of cocaine, a P365 Sig Sauer 9mm, and a Glock 23, .40 caliber handgun. Neither Dilang nor Baling made any statements to law enforcement after their arrests.

Bumatet was found in possession of a stolen firearm.  After his arrest, Bumatet made a limited statement to law enforcement denying knowledge the firearm was stolen.  The government does not intend to use any of Bumatet's statements at trial.

4

On June 14, 2022, the grand jury returned a six count Indictment charging Dilang, Baling, Bumatet, and Defendant Jock with drug and firearms crimes arising out of the execution of the search warrant at the Ellison Ave. residence on January 26, 2022. (Filing No. 1).

Baling is charged in Count I with knowing and intentional possession with intent to distribute a mixture or substance containing a detectable amount of cocaine, its salts, and optical and geometric isomers and salts of isomers, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1). Count II charges Baling with the knowing use and carrying of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). One of the two firearms alleged in this count is a "a Glock 23, .40 caliber handgun," allegedly purchased by Defendant Jock. Count III charges Baling with being a felon in possession of firearms, including the Glock 23 referenced in Count II, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Dilang is charged in Count IV with being a felon in possession of a firearm, a Ruger 57 x 28mm handgun, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Bumatet was charged in Count V with knowing possession of a stolen firearm, and has since pleaded guilty and been sentenced. (Filing No. 1; Filing No. 211 at p. 3; Filing No. 176).

Defendant Jock is charged in Count VI with knowingly transferring a firearm, specifically, "a Glock 23, .40 caliber handgun," to a prohibited person—Baling—in violation of 18 U.S.C. §§ 922(d)(1) and 924(a)(2).

Defendant Jock has filed the instant motion to sever his trial from the trial of his co-defendants, Baling and Dilang. (Filing No. 204). Defendant Jock contends he would be prejudiced by a joint trial with Baling and Dilang because the jury will be unable "to compartmentalize Mr. Jock's involvement with two career criminals," as Defendant Jock has no prior felony convictions. Defendant Jock asserts a joint trial will permit the jury to hear evidence of multiple guns, large amounts of cocaine, large sums of cash, and violent felonies that otherwise would be inadmissible in his trial, thereby severely prejudicing his right to a fair trial. (Filing No. 205 at p. 7).

## ANALYSIS

Rule 8(b) of the Federal Rules of Criminal Procedure permits the government to charge two or more defendants in an indictment if the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or

offenses." Fed. R. Crim. P. 8(b). Rule 8 "is broadly construed in favor of joinder to promote the efficient administration of justice." *United States v. Taken Alive*, 513 F.3d 899, 902 (8th Cir. 2008).

Here, Defendant Jock does not argue joinder was improper under Rule 8(b), and the Court finds the defendants and their charges are properly joined. The evidence supporting all the charges in the Indictment was recovered on January 26, 2022, following the execution of a search warrant at the Ellison Ave. residence. Defendant Jock and his co-defendants all lived at the residence and were present during that search. The defendants are each charged with drug and/or firearms crimes as a result of the search. Given the nature and manner of recovery of the evidence, and the relationship between the defendants, the defendants were properly joined in the Indictment.

Once the court determines that joinder is appropriate under Rule 8, Rule 14 specifies that the district court may nevertheless order separate trials if a joint trial would "prejudice a defendant or the government." Fed. R. Crim. P. 14(a). Such prejudice must be "compelling or severe." *United States v. Young*, 753 F.3d 757, 777 (8th Cir. 2014) (citing *United States v. Pherigo*, 327 F.3d 690, 693 (8th Cir. 2003). "Where two or more defendants have been charged in the same indictment, there is a preference for a joint trial unless the benefits are outweighed by a clear likelihood of prejudice." *United States v. Hively*, 437 F.3d 752, 765 (8th Cir. 2006) (citing *Zafiro*, 506 U.S. at 537). "Consequently the defendant carries a heavy burden in demonstrating that severance is mandated." *United States v. Young*, 753 F.3d 757, 777 (8th Cir. 2014) (citing *United States v. Sandstrom*, 594 F.3d 634, 644 (8th Cir. 2010)).

Severance is warranted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. A defendant seeking severance must show that "real prejudice" would result from a joint trial. See *United States v. Davis*, 534 F.3d 903, 916 (8th Cir. 2008). To make this showing, the defendant must establish that "(a) his defense is irreconcilable with that of his co-defendant or (b) the jury will be unable to compartmentalize the evidence as it relates to the separate defendants." *Id.* at 916-17 (quotation omitted); see also *Hively*, 437 F.3d at 765 ("Prejudice can be demonstrated by showing that the jury will be unable to compartmentalize the evidence as it relates to the separate defendants because of a 'prejudicial spillover effect.'"). "Only in an unusual case will any prejudice resulting from the ability of a jury to separate evidence be substantial enough to outweigh the general efficiency of joinder." *United States v. Martin*, 777 F.3d 984, 995 (8th Cir. 2015) (quotation omitted). "Rule 14 leaves the

6

determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *Zafiro*, 506 U.S. at 541.

In this case, Defendant Jock is charged with knowingly transferring a firearm, specifically, "a Glock 23, .40 caliber handgun," to a prohibited person, Baling, in violation of 18 U.S.C. § 922(d)(1). Section 922(d)(1) provides, "It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person . . . has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" 18 U. S. C. § 922(d)(1). Defendant Jock speculates that the jury will be unable to compartmentalize the evidence in this case because Baling and Dilang are "career criminals" charged with firearm and drug crimes, whereas Defendant Jock has no prior convictions, legally purchased two of the seized firearms, and is only charged with one count related to one firearm. However, the jury will be required to hear that Baling is a convicted felon as an element of Defendant Jock's charged offense, regardless of whether severance is granted. Additionally, the Eighth Circuit has found that a properly joined co-defendant was "not entitled to severance simply because the evidence against him was less damaging than was the evidence against [his co-defendant]." *United States v. Lewis*, 557 F.3d 601, 610-11 (8th Cir. 2009).

The Court does agree that a joint trial does present some risk of prejudice to Defendant Jock, as some of the evidence admissible against his co-defendants likely would not be admissible if he were tried alone. See *Zafiro*, 506 U.S. at 539 (citing *Bruton v. United States*, 391 U.S. 123 (1968) ("Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present the risk of prejudice."). Nevertheless, the Court finds appropriate limiting instructions will be adequate to cure that risk of prejudice. See *id.* ("When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."). Defendant offers nothing besides speculation that any potential prejudice resulting from a joint trial could not be cured by proper limiting instructions. See *Hively*, 437 F.3d at 765 ("What is required for a severance is a specific showing that a jury could not reasonably be expected to compartmentalize the evidence."). There is nothing particularly complex or unusual about this case involving three defendants charged with a total of five crimes from evidence collected on a single date that would suggest a jury will not be able to compartmentalize the evidence with appropriate limiting instructions. See *Lewis*, 557 F.3d at 610 (when assessing the

7

jury's ability to compartmentalize the evidence against joint defendants, the court should take into consideration the complexity of the case and whether adequate jury instructions and admonitions can cure any potential prejudice).  As such, this is not the "unusual case" where the general efficiency of joinder is outweighed by such potential prejudice. See *Martin*, 777 F.3d at 995 ("Only in an unusual case will any prejudice resulting from the ability of a jury to separate evidence be substantial enough to outweigh the general efficiency of joinder.").  Under the circumstances, the Court finds Defendant Jock has failed to meet his "heavy burden" to show compelling or severe prejudice from a joint trial, and therefore his motion to sever will be denied.  Upon consideration,

**IT IS ORDERED:**  Defendant Jany G. Jock's Pretrial Motions (Filing No. 204) requesting severance of his trial is denied.

Dated this 29th day of December, 2023.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge